JARED L. CHERRY (11534)
**PHILLIPS WINCHESTER, LLC**
4001 South 700 East, Suite 500
Salt Lake City, Utah 84107
Tel: (801) 935-4932
Fax: (801) 935-4936
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| **RIPPLE NEUROTECH VENTURES, LLC,** a Utah Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>**NEUROTRONICS, INC.**, a Florida Corporation,<br><br>Defendant. | Civil Action No.: _____<br><br>Honorable: _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT
OF NON-INFRINGEMENT OF TRADEMARK RIGHTS**

Plaintiff Ripple Neurotech Ventures, LLC ("Ripple"), for its claims against defendant Neurotronics, Inc. ("Neurotronics") ("Defendant"), alleges as follows:

## **PARTIES**

1. Ripple Neurotech Ventures, LLC is a Utah limited liability company with its principal place of business at 2056 South 1100 East, Salt Lake City, UT 84106.

2. Neurotronics, Inc. is a Florida corporation with its principal place of business at 4500 NW 27th Ave STE C-2, Gainesville, FL 32606.

## JURISDICTION AND VENUE

3. This action involves alleged infringement of U.S. Trademark Reg. No. 3,897,303.

4. This Court has subject matter jurisdiction over the claims relating to the Lanham Act (15 U.S.C. §§ 1125 et seq.) pursuant to 28 U.S.C. § 1331 (federal subject matter jurisdiction), 28 U.S.C. §1338(a) (any act of Congress relating to copyrights, patents, and trademarks), and the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202.

5. This action arises out of demands sent by Neurotronics to Ripple in Utah and alleging infringement of Neurotronics's alleged rights in the NOMAD trademark, demanding that Ripple cancel pending sales, demanding that Ripple cease and desist from all use of the word NOMAD, and demanding payment of $30,000.00.

6. Neurotronics's demands create an actual controversy between the parties and are causing harm in this District to Ripple by demanding that Ripple immediately and permanently discontinue all sales of Ripple's EXPLORER NOMAD product.

7. Ripple currently has orders for its EXPLORER NOMAD Product, and Neurotronics's demands are made with the "express aim" of halting sales of Ripple's EXPLORER NOMAD product.  *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1075 (10th Cir. 2008) (finding personal jurisdiction in Colorado over non-Colorado defendants who sent a notice of claimed copyright infringement to eBay in a successful effort to halt a Colorado company's online auction of allegedly infringing items).

## RIPPLE'S EXPLORER NOMAD PRODUCT

8. Ripple's EXPLORER NOMAD product is a portable electrophysiology processor that allows for the recording of 512 channels of multi-modal electrophysiological signals and neural stimulation.

9. Ripple's EXPLORER NOMAD product is targeted for use in research and laboratory settings for research purposes.

10. Ripple's EXPLORER NOMAD product is used by highly-trained researchers for highly-specific applications.

11. Ripple's EXPLORER NOMAD system is used with other products in Ripple's EXPLORER line.

### NEUROTRONICS'S ALLEGATIONS OF INFRINGEMENT

12. On July 29, 2020, counsel for Neurotronics sent the letter attached as Exhibit A (the "Cease and Desist Letter") to Ripple.

13. The Cease and Desist Letter identifies U.S. Trademark Reg. No. 3,897,303, which pertains to a "medical device used for the acquisition of physiological data for polysomnography" in Int.'l Class 10.

14. Polysomnography is a type of sleep study.

15. Neurotronics's NOMAD product is sold to highly-trained professionals who conduct sleep studies.

16. Ripple's EXPLORER NOMAD product is *not* a polysomnography device.

17. Ripple's EXPLORER NOMAD product and Neurotronics's NOMAD product are *not* competitive products.

### NEUROTRONICS'S CEASE AND DESIST LETTER MISSTATES THE LAW

18. Neurotronics claims entitlement to treble damages and/or statutory damages under the Lanham Act between $200,000 and $2,000,000.

19. The provisions of the Lanham Act providing for treble damages and/or statutory damages between $200,000 and $2,000,000 are applicable only to "counterfeit" marks.

20. A "counterfeit" mark under the Lanham Act is defined as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."

21. Entitlement to enhanced damages for use of a "counterfeit" mark is subject to a high burden of proof. *See e.g.*, *Adams v. Grand Slam Club/Ovis*, 2013 WL 1444335, *7 (D. Colo. 2013) (Dismissing counterfeiting allegation under Rule 12(b)(6) and noting "[I]f alleging that an infringing mark is 'nearly identical' and 'confusingly similar' suffices to state a claim for counterfeiting, virtually all trademark infringement claims would also be counterfeiting claims"); *Kelly-Brown v. Winfrey*, 717 F.3d 295, 315 (2d Cir. 2013) (Affirming dismissal for failure to state a claim of counterfeiting because "the font, color, and capitalization of [plaintiff] Kelly–Brown's mark differed from the offending uses made by defendants"); *Gucci America, Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D. N.Y. 2012) ("counterfeiting is the 'hard core' or 'first degree' of trademark infringement that seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation'").

22. Neurotronics has alleged no facts substantiating claims for counterfeiting or entitlement to remedies reserved for instances of counterfeiting.

23. A highly-trained individual looking to conduct a polysomnography study will not be "trick[ed]" into believing he or she is getting Neurotronics's NOMAD Product by Ripple's EXPLORER NOMAD electrophysiology processor.

24. A highly-trained scientist looking to conduct laboratory experiments requiring the recording of up to 512 channels of multi-modal electrophysiological signals and neural stimulation will not believe that Neurotronics's polysomnography NOMAD Product is equivalent.

25.     Neurotronics's claims of entitlement to damages reserved for instances of counterfeiting are an attempt to intimidate and harass Ripple into a payment of $30,000 and/or to coerce Ripple to accept Neurotronics's other demands.

## THERE IS NO LIKELIHOOD OF CONFUSION OR EVIDENCE OF ACTUAL CONFUSION

26.     Neurotronics has alleged no facts related to actual confusion despite the fact that Ripple's EXPLORER NOMAD product and Neurotronics's NOMAD product have been sold under the marks for several years.

27.     Prior to receipt of the Cease and Desist Letter, Ripple was unaware of Neurotronics's NOMAD product and had not received any indication of any confusion related to Ripple's EXPLORER NOMAD product and Neurotronics's NOMAD product.

28.     The absence of actual confusion weighs against Neurotronics's clams of a likelihood of confusion.  *Nike, Inc. v. Just Did It Enterprises*, 6 F. 3d 1225 (7th Cir. 1993) ("it is certainly proper for the trial judge to infer from the absence of actual confusion that there was also no likelihood of confusion").

29.     Ripple's products and Neurotronics's products are each used in highly-specialized fields by sophisticated professionals, which weighs against a finding of a likelihood of confusion.  *Leelanau Wine Cellars v. Black & Red*, 502 F.3d 504, 519 (6th Cir. 2007) ("When potential buyers possess special expertise or are sophisticated purchasers of the goods at issue, a higher standard is appropriate, and the likelihood of confusion decreases").

30.     The term "nomad" is defined as "an individual who roams about."  *Nomad*, Merriam Webster, available at https://www.merriam-webster.com/dictionary/nomad.

31. Use of the term "nomad" by both Ripple and Neurotronics describes the portability of each company's respective product. See e.g., https://www.neurotronics.com/products ("The compact and powerful Nomad ***Portable*** Recorder is a Type III sleep diagnostic device") (emphasis added); https://rippleneuromed.com/ripple-products/nomad/ (describing Ripple's EXPLORER NOMAD product as "Multi-Modal Powerful Electrophysiology in a Lightweight and ***Portable*** Package") (emphasis added).

32. Where an originally descriptive term is selected as a mark, "a certain degree of confusion" is tolerable because of the "undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first." *KP Permanent Makeup v. Lasting Impressions,* 543 U.S. 111, 122 (2004). *See also Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 12-13 (2d Cir.1976) (when a mark has some descriptive qualities, not every competing use of the mark may be excluded even when registered).

33. EXPLORER NOMAD and NOMAD are distinct in sound, appearance, and connotation as applied to their respective goods. *Presto Prods., Inc. v. Nice-Pak Prods.*, Inc., 9 USPQ2d 1895, 1897 (TTAB 1998) (noting the first portion of a mark is "likely to be impressed upon the mind of a purchaser and remembered.")

## FIRST CLAIM FOR RELIEF

(Declaratory Judgment of Non-Infringement under 17 U.S.C. §§ 101 et seq.)

34. Ripple incorporates by reference the allegations contained in paragraphs 1 through 33.

35. Neurotronics has claimed that Ripple has infringed its trademark rights.

36. Neurotronics has demanded payment of $30,000 and other forms of relief.

37. Neurotronics has demanded that Ripple cancel actual sales of its EXPLORER NOMAD product.

38. An actual, present, and justiciable controversy has arisen between Ripple and Neurotronics concerning Ripple's right to sell Ripple's EXPLORER NOMAD product and Ripple's liability, if any, to Neurotronics.

39. Ripple seeks a declaratory judgment from this Court that Ripple has not infringed any cognizable trademark rights of Neurotronics and that Ripple is not liable to Neurotronics in any amount.

## **PRAYER FOR RELIEF**

WHEREFORE, Ripple respectfully requests that the Court:

A. Enter judgment according to the declaratory relief sought by Ripple;

B. Award Ripple its costs and fees incurred in this action; and

C. Enter such other further relief to which Ripple may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

Dated: September 18, 2020

        JARED L. CHERRY
        **PHILLIPS WINCHESTER**

        By:   /s/ Jared L. Cherry
              *Attorney for Plaintiff*